IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The Ohio Bureau of Workers' :
Compensation,
   :
    Plaintiff,
   :
  v.   Case No. 2:05-cv-0673
   :
MDL Active Duration Fund,   JUDGE GRAHAM
LTD., et al.,   :

    Defendants.   :

OPINION AND ORDER

    This is a diversity action brought by the Ohio Bureau of Workers' Compensation ("Bureau") alleging violations of Ohio state law.  Jacobson Excavating & Contracting ("Jacobson"), an employer that contributes to the Bureau's fund, filed an additional complaint and a motion to intervene pursuant to Fed. R. Civ. P. 24.  That motion is now fully briefed.  For the following reasons, Jacobson's motion to intervene will be denied.

I.

    On June 10, 2005, the Bureau filed a complaint in the Franklin County Court of Common Pleas against MDL Active Duration Fund, MDL Capital Management, Warwick Fiduciary Services, Hamilton Fiduciary Services, and other individuals alleging, *inter alia*, common law fraud, violations of the Ohio Securities Act, negligent misrepresentation, breach of fiduciary duty, breach of contract, common law conspiracy, common law unjust enrichment, and common law aiding and abetting.  Subsequently, the lawsuit was removed to the United States District Court, Southern District of Ohio.

    According to the complaint, in May 1998 the Bureau selected MDL Capital as its fixed-income investment manager.  Pursuant to

the contract and agreement between the two parties, the Bureau allocated approximately $55 million for MDL Capital to create a long bond account. For the first five years of the account, MDL Capital's investments yielded an average annual return of 6.85%, which mirrored the Lehman Government Credit Bond Index. Subsequently, the Bureau invested an additional $300 million for MDL Capital to manage.

The Fund was a separate investment vehicle specifically created to outperform the Lehman Government Credit Bond Index. In November 2002, the Fund entered into an agreement with MDL Capital to form the MDL Active Duration Fund. Under the agreement, MDL Capital would invest the Fund's assets and manage its business and administrative operations. Pursuant to the agreement between the MDL Capital and the Fund, MDL Capital was permitted to leverage the Fund's investment portfolio up to 150% to increase yield and enhance total return.

To invest in the Fund, an investor was required to execute a subscription agreement, which allowed the investor to purchase shares in the Fund. In August 2003, after allegedly receiving advice from MDL Capital, the Bureau allocated $100 million from its existing account with MDL Capital to purchase shares in the Fund. By years end 2004, the Bureau subsequently allocated an additional $125 million to the Fund.

In August 2004, the Fund allegedly issued a letter to the Bureau highlighting unilateral changes and modifications made to the Fund. Specifically, the letter noted that "leveraging of U.S. Treasury securities 'has been and will continue to be significantly higher than 150%.'" Bureau Complaint at 35. Furthermore, the letter allegedly contained a space at the end for a signature that stated, "[r]eceipt of this correspondence and our concurrence with the enclosed Revised Memorandum is hereby acknowledged by the State of Ohio Bureau of Workers'

Compensation." Id. at 36. According to the Bureau, it did not agree, concur, or approve the proposed changes outlined in the letter. Id. at 37.

The complaint alleges at approximately the same time the Bureau received the letter for proposed changes, the Bureau first learned that MDL Capital leveraged more than 1900% of the Fund's assets. Moreover, by the time the Bureau discovered the alleged excessive and unauthorized leveraging, the Bureau's investment portfolio was substantially depleted. By November 2004, the Bureau was able to recover approximately $9 million, which allegedly resulted in a loss of approximately $215 million.

On June 23, 2005, Jacobson, an Ohio corporation, filed a motion to intervene in the Bureau's lawsuit. Jacobson asserts in its motion that it is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a) or, alternatively, that it should be granted permission to intervene under Rule 24(b). All the original parties in this case oppose Jacobson's intervention. Because Jacobson is an Ohio corporation, and none of the defendants are Ohio residents, this Court's diversity jurisdiction would not be destroyed if Jacobson intervenes.

## II(a).

Intervention is governed by Fed. R. Civ. P. 24, which states in pertinent part that:

> "(a) Intervention of Right
>
> Upon timely application anyone shall be permitted to intervene in an action: ...(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing

3

parties.

The leading case in this circuit on both permissive intervention and intervention as of right is Bradley v. Milliken, 828 F.2d 1186 (6th Cir. 1987). With respect to intervention as of right under Rule 24(a)(2), Milliken indicates that first, the application must be timely. Whether an application for intervention is timely must be evaluated in light of the purpose for which intervention is sought, the length of time that the intervenor has known about the interest in the litigation, whether any of the original parties to the litigation would be prejudiced, and the stage to which the lawsuit has progressed when intervention is sought. See also Michigan Association for Retarded Citizens v. Smith, 657 F.2d 102, 105 (6th Cir. 1981) (holding that the stage to which a lawsuit has progressed is only one factor in the inquiry and is not dispositive, and that the court must also consider whether there are any "unusual circumstances" militating either in favor of or against intervention).

Second, in order to intervene as of right, a party must have an interest in the subject matter of the suit. Milliken indicates that this requirement must be liberally construed. Id. at 1192. However, the interest must be direct and substantial rather than peripheral or speculative. Grubbs v. Norris, 870 F.2d 343 (6th Cir. 1989); Meyer Goldberg, Inc. v. Goldberg, 717 F.2d 290 (6th Cir. 1983).

Third, the intervenor's ability to protect its interest must somehow be impaired by the disposition of the case. Grubbs, supra; Triax Co. v. TRW, Inc., 724 F.2d 1224, 1227 (6th Cir. 1984).

Finally, the interest which the intervenor seeks to assert must not be adequately represented by the existing parties to the

4

suit. Milliken, supra, at 1192. Ordinarily, where the intervenor and an existing party have the same ultimate objective in the litigation, the representation of the intervenor's interest by the existing party is presumed to be adequate, and the intervenor bears the burden of demonstrating the inadequacy of that party's representation of his interests. Meyer Goldberg, Inc. v. Goldberg, supra, at 293; see also In re General Tire and Rubber Co. Securities Litigation, 726 F.2d 1075, 1087 (6th Cir.), cert. denied sub nom. Schreiber v. Gencorp. Inc., 469 U.S. 858 (1984). However, the burden is not a particularly heavy one, and is satisfied if the intervenor can show that there is substantial doubt about whether his interests are being adequately represented by an existing party to the case. National Wildlife Federation v. Hodel, 661 F.Supp. 473 (E.D.Ky. 1987); see Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972).

Jacobson argues that its motion to intervene is timely within the confines of Civil Rule 24. Based on a review of the filing dates versus the status of this case when the motion to intervene was filed and the fact that no original party contests "timeliness" as an issue under Civ. R. 24(a), the Court agrees that Jacobson's motion was timely within the definition of the rule. However, this Court reaches a different conclusion in determining whether Jacobson has a "direct and substantial rather than a peripheral or speculative" interest in the Bureau's case against MDL and the other named defendants.

First, under the Ohio Constitution, the Ohio's Workers' Compensation laws established in Title 41 of the Ohio Revised Code, and Ohio case law, once an Ohio employer, such as Jacobson, pays its premium to the workers' compensation fund, that employer no longer has a direct and substantial interest in the money contributed. See, e.g., State ex rel. Rudd v. Industrial Commission of Ohio, 116 Ohio St. 67, 76 (1927)(noting that the

5

workers' compensation fund "does not belong to the employers, but to the injured workmen and their dependants; and under section 35, art. 2, of the Constitution, the fund is to be 'administered by the state, determining the terms and conditions upon which payment shall be made....'").  Moreover, since the employer loses its interest in the money contributed to the fund once the premium is paid, the Ohio Supreme Court held that the employer does not have a due process right in the contribution.  The Court stated:

> Finally, as a controlling reason why the claim of the employer, that its property is taken without *due process*, cannot be sustained, is the concession that the state insurance fund *does not belong to the employer*.  Such being the fact, *due process* is not available to the employer, for his property is not taken.  The employer, having paid his premium to the state, has acquired not only insurance, but has also obtained immunity from suit- has obtained his quid pro quo-meanwhile the fund is held in trust by the state, solely for the benefit of injured workmen and their dependents.

State ex. rel. Williams v. Industrial Commission of Ohio, 116 Ohio St.45, 55 (1927) (emphasis in original).

Second, it appears from the complaint that Jacobson, as an Ohio employer, does not have a direct and substantial interest in any of the legal claims being asserted by the Bureau against MDL or the other defendants.  The only difference between the complaints is that Jacobson adds an additional count specifically alleging "Negligence/Gross Negligence/Wanton and Willful Misconduct," but even that claim describes a duty of care that the defendants owed to the Bureau.  Jacobson Complaint at Count XI.  Furthermore, under the common law fraud claims in both complaints, Jacobson and the Bureau note that the Fund, MDL, and others made material misrepresentations and omissions to *the*

6

*Bureau* that were key to *the Bureau's* decision to invest in the Fund. Bureau Complaint at 52; Jacobson Complaint at 85. Similarly, in Count II, an Ohio Securities Act claim, both complaints state that

> MDL Capital and the Fund made untrue statements of material fact and omitted to state material facts about the Fund's investments. MDL Capital and the fund made these untrue statements and omissions *to the Bureau* in connection with the sale of, or the offer to sell securities-shares in the Fund-to the Bureau....

Jacobson Complaint at 90; Bureau complaint at 57 (emphasis added). In sum, if Jacobson did intervene and the Bureau was successful in this lawsuit, any direct monetary award will be paid to *the Bureau*, *not* Jacobson, because *the Bureau* was the direct recipient of the alleged harm as described in both complaints.

Finally, Jacobson notes that "on May 26, 2005...the Bureau announced an average 4.4% rate increase for private employers." This rate increase may appear connected to the Bureau's troubles with the compensation fund's investments with MDL. In fact, Jacobson argues that it has a direct and substantial interest in the claims made in this case in order to insure the Bureau recovers all of the money necessary to maintain the compensation fund's solvency and guard against future rate hikes allegedly caused by MDL's investments. A review of the complaint and the motion to intervene, however, does not provide any support that Jacobson's interest and involvement in this case would prevent any of the alleged concerns from coming to fruition. Rather, based on the pleadings, it appears that Jacobson's interest in guarding against rate hikes is merely peripheral and speculative because there is no direct tie between the MDL investment and the rate hike. Moreover, there is no evidence that indicates the

7

Bureau would not increase the rate charged to Ohio employers even if it wins this case.

In Athens Lumber Co. v. Federal Election Comm'n, 960 F.2d 1364 (11th Cir. 1982), Athens Lumber challenged the constitutional validity of section 441b(a) of the Federal Elections Campaign Act.  A union attempted to intervene on behalf of the defendant, the Federal Election Commission, pursuant to Fed. R. Civ. P. 24(a) and (b).  Id.  The union argued, *inter alia*, that it had an interest in the case because it would lose significant political ground if restrictions on corporate political expenditures were lifted.  Id. at 1365.  Moreover, the union contended that the FEC could not adequately represent the union's interest because the FEC was a public institution that lacked the incentive to vigorously defend the case.  Id.  The trial court denied both intervention of right and permissive intervention, and the Court of Appeals affirmed that decision.

The Court of Appeals concluded that the union lacked a "direct, substantial, legally protectable interest" because it was not a "real party in interest in the transaction which is the subject of the proceeding."  Id. at 1366.  The Court stated that the "sole basis of the [the union's] interest is general concern...shared with all unions and all citizens concerned about the ramifications of direct corporate expenditures."  Id.  Finally, the Court noted that the "interest is so generalized it will not support a claim for intervention as of right."  Id.

Like the union-intervenor in Athens Lumber, Jacobson's interest in this case is not direct, substantial, or legally protectable.  Rather, Jacobson's interest is a general concern, shared with all employers paying into the Ohio workers' compensation fund that the compensation fund will remain solvent and Ohio employers will not endure rate hikes as a result of the alleged MDL wrongdoings.  See, id., Cf. Michigan State AFL-CIO v.

8

Miller, 103 F.3d 1240, 1246-47 (6th Cir. 1997) (holding that Athens Lumber was correctly decided but distinguishing the facts and concluding that the intervenor in Miller did have a "direct and substantial interest").  Based on both the Bureau's and Jacobson's complaints, the real party in interest is the Bureau because all alleged wrongdoings concern transactions and events that took place solely between the Bureau and all named defendants.

Accordingly, Jacobson fails to meet the "direct and substantial interest" requirement necessary for Civ. R. 24(a) intervention.  It is not necessary, therefore, to address whether the disposition of the action would impair Jacobson's ability to protect its interest or whether the interest is inadequately represented by the Bureau.  Thus, the Court DENIES Jacobson's motion to intervene (file doc. #15) pursuant to Civ. R. 24(a).

II(b).

The Court has broad discretion to permit parties to intervene under Rule 24(b), and that rule is to be construed liberally.  See, e.g., German by German v. Federal Home Loan Mortgage Corp., 896 F. Supp. 1385 (S.D.N.Y. 1995).  The rule governing permissive intervention states, in relevant part that

> (b)   Permissive Intervention
>
> Upon timely application anyone may be permitted to intervene in an action: ...(2) when an applicant's claim or defense and the main action have a question of law or fact in common....  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The focus of the inquiry is on the timeliness of the application and the potential for prejudice to existing parties. United States v. City of New York, 179 F.R.D. 373, 381 (E.D.N.Y.

9

1998), aff'd 198 F.3d 360 (2d Cir. 1989). However, the Court may also consider other "relevant factors [such as] the nature and extent of the intervenor's interest, any contribution the intervenor's presence will have on the just and equitable adjudication of the matter, and whether the intervenor's interests are adequately protected by the parties of record." Mrs. W. v. Tirozzi, 124 F.R.D. 42, 45 (D. Conn. 1989). Although adequacy of representation by an existing party is a consideration, it is not dispositive, and the Court may permit a party to intervene if the presence of that party will enhance representation of an interest already asserted, or even when the intervenor's interests are completely and adequately represented by an existing party. See, e.g., Eljer Manufacturing v. Liberty Mutual Insurance Co., 773 F. Supp. 1102, 1108 (N.D. Ill. 1991), rev'd on other grounds, 972 F.2d 805 (7th Cir. 1992); Austell v. Smith, 634 F. Supp. 326, 334-35 (W.D. N.C.), appeal dismissed, 801 F.2d 393 (4th Cir. 1986).

Similar to the Civ. R. 24(a) analysis, Jacobson's motion to intervene pursuant to Civ. R. 24(b) appears timely. However, because Jacobson's interest in this pending lawsuit is "peripheral and speculative," its intervention into this case is likely to cause undue delay to, and is not likely to benefit, all future court proceedings. Furthermore, Jacobson's presence in this case may burden the existing parties with additional discovery about Jacobson's interests in the case which would otherwise be unnecessary for those parties to engage in.

Most importantly, because both complaints allege basically the same claims, the Bureau, in representing all employers in Ohio that pay into the workers' compensation fund, can adequately represent all of Jacobson's interests in this case. Moreover, because all of the defendants' alleged wrongdoings are directly tied only to business dealings with the Bureau, and not Jacobson,

10

the Bureau is the best, and potentially the only, party to represent the Ohio employers. There is no reason to believe that the Bureau will make anything but a vigorous effort to recover its alleged losses. Under all these circumstances, the better exercise of discretion is to deny Jacobson's motion to intervene (file doc. #15) pursuant to Civ. R. 24(b).

III.

Based on the foregoing opinion, Jacobson's motion to intervene pursuant to Fed. R. Civ. P. 24 (doc. #15) is DENIED.


                                        s/James L. Graham
                                        JAMES L. GRAHAM
                                        United States District Judge

DATE: September 27, 2005