IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The Ohio Bureau of Workers'
Compensation,

      Plaintiff,

     v.                    Case No. 2:05-cv-673

MDL Active Duration Fund,
LTD., et al.,

      Defendants.

OPINION AND ORDER

    This is an action filed by the Ohio Bureau of Workers'
Compensation, an agency of the state of Ohio, against the MDL
Active Duration Fund, LTD. ("the Fund"), MDL Capital Management
Inc. ("MDL Capital"), and Mark D. Lay.  The complaint alleges
violations of Ohio law, and jurisdiction in this court is based on
diversity of citizenship.  Other defendants named in the complaint
were previously dismissed from this action due to lack of personal
jurisdiction in an opinion and order filed on June 1, 2006.

    This matter is before the court on the motion of the remaining
defendants to dismiss the complaint pursuant to Fed. R. Civ. P.
12(b)(6) for failure to state a claim for which relief may be
granted.  A complaint may be dismissed for failure to state a claim
only where it appears beyond doubt that the plaintiff can prove no
set of facts in support of its claim which would entitle it to
relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The court
must construe the complaint in a light most favorable to the
plaintiff and accept all well-pleaded allegations in the complaint
as true.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974).  A motion to
dismiss under Rule 12(b)(6) will be granted if the complaint is

without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. <u>Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 697 (6th Cir. 1978).

A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 88 96th Cir. 1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10 (6th Cir. 1987).

As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56. <u>Jackson v. City of Columbus</u>, 194 F.3d 737, 745 (6th Cir. 1999); <u>Weiner</u>, 108 F.3d at 88. However, courts may consider matters of public record. <u>Jackson</u>, 194 F.3d at 745. <u>See also</u> <u>new England Health Care Employees Pension Fund v. Ernst & Young, LLP</u>, 336 F.3d 495, 501 (6th Cir. 2003)("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."). The court may also consider a document or instrument which is attached to the complaint, or which is referred to in the complaint and is central to the plaintiff's claim. <u>See</u> Fed.R.Civ.P. 10(c)("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); <u>Weiner</u>, 108 F.3d at 89.

I. <u>Common Law Fraud (Count I) and Fraudulent Inducement (Count II)</u>

Defendants allege that the allegations of common law fraud alleged in Count I and fraudulent inducement alleged in Count II fail to state a claim. Defendants also argue that these allegations fail to satisfy the particularity requirement of Fed.R.Civ.P. 9(b).

While state law governs the burden of proving fraud at trial in a diversity action, the procedure for pleading fraud is governed by the pleading requirements of Rule 9(b). <u>Minger v. Green</u>, 239 F.3d 793, 800 (6th Cir. 2001). Rule 9(b) requires that averments of fraud must be stated with particularity. The Sixth Circuit requires a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation relied upon, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud. <u>Coffey v. Foamex L.P.</u>, 2 F.3d 157, 161-62 (6th Cir. 1993). Allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made. <u>Id</u>. at 162.

However, when deciding a motion to dismiss for failure to comply with Rule 9(b), this court must also consider the policy favoring simplicity in pleading codified in Fed.R.Civ.P. 8, which requires a "short and plain statement of the claim." <u>Sanderson v. HCA-The Healthcare Co.</u>, 447 F.3d 873, 876 (6th Cir. 2006)(Rule 9(b)'s particularity requirement must be read in harmony with the requirements of Rule 8). The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, thus allowing the defendants to answer and

3

address the plaintiff's claim of fraud in an informed manner. Coffey, 2 F.3d at 162; United States ex rel. Bledsoe v. Community Health Systems, Inc., 342 F.3d 634, 643 (6th Cir. 2003)(complaint should provide fair notice to defendants and enable them to prepare an informed pleading responsive to the specific allegations of fraud).

The elements of a claim of fraud under Ohio law are: (1) a representation, or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Gaines v. Preterm-Cleveland, Inc., 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

The complaint includes allegations of the alleged misrepresentations and concealment of facts on the part of the defendants which form the basis for plaintiff's fraud claims. The alleged misrepresentations include statements in the Private Placement Memorandum ("PPM") submitted by the Fund, as well as other statements and correspondence. The complaint alleges the nature of these statements and omissions, as well as the approximate time and place of these statements and omissions.

Defendants argue that the plaintiff could not have reasonably relied on the language concerning the leverage guideline contained in the PPM in deciding to invest in the Fund. The leverage provision states:

4

>The Fund is expected to leverage the Fund's investment portfolio as a means to increase yield and enhance total return. Up to 150% of the Fund's assets, at the time of investment, may be leveraged (*i.e.*, the combined value of borrowings and short positions). Leveraging will include, but is not limited to, short selling of securities, reverse repurchase agreements, certain option and futures transactions plus any borrowings to leverage the Fund's assets. Although the use of leverage may enhance returns on the Fund's portfolio and increase the number of investments that may be made by the Fund, it may also substantially increase the risk of loss. The percentage included above is intended as a guideline and may be changed from time to time at the sole discretion of the Board of Directors.

Complaint, Ex. 1, p. 3.

Defendants argue that in light of the language that the limit on leveraging of 150% "is intended as a guideline and may be changed from time to time at the sole discretion of the Board of Directors," the limit was not a sufficiently definite representation to form the basis for a fraud claim. However, this argument is based on defendants' interpretation of the leveraging provision. The leveraging provision is arguably subject to different interpretations. Further, plaintiff's allegations are sufficient to allege that the leveraging guideline provision, even as interpreted by defendants, was not followed. Plaintiff alleges that the Fund's board of directors never took any action to change the leverage percentage. Amended Complaint, ¶ 65. In other words, the board never exercised its discretion to change the PPM guideline of 150%, yet the funds were leveraged well beyond the 150% guideline. Plaintiff has alleged that from April 2004 through December 2004, the Fund frequently exceeded the leverage guideline, without disclosure of this fact to plaintiff. Amended Complaint, ¶ 60. Plaintiff also argues that the 150% figure was so far

5

exceeded that it could not reasonably have been deemed to have been used as a "guideline." It cannot be said that the plaintiff's fraud claim, insofar as it is based on the leverage percentage in the PPM, is insufficient to allege justifiable reliance as a matter of law. In addition, there are other alleged representations and omissions described in the complaint which form a basis for plaintiff's fraud claims.

Defendants also argue that the complaint fails to adequately allege intent or scienter. Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Green, 239 F.3d at 800. Plaintiff has alleged that the defendants knowingly made false representations and knowingly failed to disclose facts concerning the amount being leveraged and the investment strategies of the Fund, and that such representations and concealment of facts were made with knowledge of falsity and with the intent to deceive. Amended Complaint, ¶¶ 100-108, 113. Plaintiff has adequately alleged the necessary element of intent.

The court finds that Counts I and II of the amended complaint comply with the requirements of Rule 9(b). However, even if plaintiff's allegations fail to satisfy those requirements, dismissal on this basis alone would not be appropriate in the absence of a motion for a more definite statement under Fed.R.Civ.P. 12(e). See Coffey, 2 F.3d at 162. No such motion has been filed in this case.

## II. Ohio Securities Law Violations (Counts III, IV and V)

Defendants have moved to dismiss Counts III, IV and V, which allege violations of Ohio's securities laws. Count III alleges a

6

violation of Ohio Rev. Code § 1707.41(A), which provides:

> In addition to the other liabilities imposed by law, any person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts, unless the offeror or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the omitted facts to be not material.

All the defendants are named in this count.

Count IV alleges a violation of Ohio Rev. Code §1707.42(B) against MDL Capital.  Section 1707.42(B) provides that an investment adviser is liable for damages resulting from acts of an investment advisor which violate Ohio Rev. Code Chapter 1707. Count V, which names all defendants, invokes Ohio Rev. Code §1707.43(A), which provides for a recision remedy at the election of the purchaser.

The above sections create no new civil liabilities beyond those established by common law, and do not limit or restrict common law liabilities for deception or fraud other than as specified in those sections.  Ohio Rev. Code §1707.40.

Defendants argue that the complaint fails to comply with the requirements of Rule 9(b) that the fraud which is the underlying basis for the above statutory violations be pleaded with particularity.  Defendants rely on Nickels v. Koehler Management Corp., 541 F.2d 611, 616-17 (6th Cir. 1976), in which the court stated that an action under §1707.41 required either knowledge of

7

the falsity of the representation or lack of diligence in ascertaining its truth or falsity on the part of the seller. <u>Nickels</u> was cited by the court in <u>Citizens National Bank v. Barge-In, Inc.</u>, No. CA83-07-008 (12th Dist. unreported), 1984 WL 4329 (Ohio App. Sept. 28, 1984). However, as noted previously, the court has determined that the complaint complies with Rule 9(b), and adequately pleads facts supporting the elements of fraud, including knowledge and intent.

Defendants argue that a securities fraud claim cannot be based on the leveraging language in the PPM because the PPM does not contain a representation that leveraging would always be capped at 150%. Defendants point to their later disclosures to the plaintiff that the leveraging limit had been exceeded as evidence that they did not intend from the time of the initial investment to exceed the leveraging limit in the PPM.

This argument is based on defendants' interpretation of the leveraging language. The PPM states that "[u]p to 150% of the Fund"s assets, at the time of investment, may be leveraged." Although the PPM states that the leveraging limit of 150% is a guideline which could be modified at the discretion of the board of directors, plaintiff has alleged in the complaint that the leveraging limit was never changed by the board, and was never actually followed as a guideline. Plaintiff has also alleged in the amended complaint that at the time the plaintiff's investment was solicited by means of the PPM, the defendants did not intend to follow the investment strategies and leverage guideline set forth in the PPM, and knowingly concealed facts regarding the true amount of leverage actually employed from the inception of the investment.

Amended Complaint, ¶¶ 102-103.

The allegations that defendants at some point disclosed that the investments in the fund had been leveraged in excess of 150% do not establish as a matter of law that defendants did not intend to exceed the leveraging guideline from its inception. Hypothetically, a trier of fact could conclude that the disclosures about the leverage guideline being exceeded were made when they were because discovery of that fact by plaintiff was inevitable due to losses to the Fund. In addition, plaintiff has alleged that while Lay disclosed at a meeting on September 16, 2004, that the Fund's assets had been leveraged by approximately 900%, the plaintiff later learned that the Fund's assets had actually been leveraged by approximately 1,900%. Amended Complaint, ¶¶ 87-88. These are evidentiary matters which would more appropriately be addressed on summary judgment or at trial.

The complaint is sufficient to allege claims for securities fraud under Ohio law, as opposed to a mere breach of contract. The complaint is adequate to state a claim under §§ 1707.41 and 1707.42.

In regard to the rescission remedy pleaded under §1707.43, the court notes that rescission is an alternative remedy which the plaintiff may elect in lieu of the damages remedy under §1707.41. See Federated Mgt. Co. v. Coopers & Lybrand, No. 03AP-204 (10th Dist. unreported), 2004 WL 2008271 (Ohio App. Sept. 9, 2004)(damages under §1707.41 and rescission under §1707.43 are alternative remedies and trial court was correct in ordering plaintiffs to elect their remedy); Byrley v. Nationwide Life Insurance Co., 94 Ohio App.3d 1, 20, 640 N.E.2d 187 (1994). Under

9

§1707.43(A), a purchaser electing the rescission remedy must tender the securities to the seller in person or in open court for the full amount paid by the purchaser.  Defendants contend that plaintiff has already redeemed its shares in the fund.  If that is the case, then plaintiff may have thereby elected the damages remedy and waived the rescission remedy.  However, the amended complaint does not indicate that this has occurred.  Rather, it simply states that as of November 23, 2004, the "Bureau had recovered approximately $9 million of its $225 million investment in the Fund."  Amended Complaint, ¶95.  In the absence of more information, the court cannot determine whether the plaintiff has waived the rescission remedy, and the motion to dismiss Count V cannot be granted.

III.  Negligent Misrepresentation (Count VI) and Negligent Nondisclosure (Count VII)

In Count VI, plaintiff asserts a claim of negligent misrepresentation against defendants Lay, MDL Capital, and the Fund.  Plaintiff alleges that these defendants supplied false information to the plaintiff for its guidance in business transactions, and failed to exercise reasonable care of competence in providing truthful and accurate information to plaintiff.  Defendants argue that plaintiff's claim of negligent misrepresentation, as asserted in Count VI of the amended complaint against defendants MDL Capital and the Fund, is precluded because it is duplicative of plaintiff's breach of contract claims in Count XIII, alleging breach of the 2002 Advisory Agreement entered into between MDL Capital and the Fund, and Count XIV, alleging a breach of the Subscription Agreement between the plaintiff and the Fund.

10

Plaintiff has also asserted a breach of contract claim in Count XII, based on the 1998 Management Agreement between plaintiff and MDL Capital.  Defendants have not included Count XII in their argument here, but argue elsewhere that this agreement does not apply to the circumstances surrounding plaintiff's investment in the Fund.

Ohio recognizes the tort of negligent misrepresentation, which lies against a party "who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions ... if he fails to exercise reasonable care or competence in obtaining or communicating the information." <u>Delman v. City of Cleveland Hts.</u>, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).  Liability for negligent misrepresentation is based on the negligence of the actor in failing to exercise reasonable care or competence in supplying the correct information. <u>Moffitt v. Auberle</u>, 167 Ohio App.3d 120, 854 N.E.2d 222 (2006).  A representation made with an honest belief in its truth may still be negligent because of a lack of reasonable care in ascertaining the facts, or in the manner or expression, or absence of the skill and competence required by a particular business or profession. <u>Martin v. Ohio State Univ. Foundation</u>, 139 Ohio App.3d 89, 103-04, 742 N.E.2d 1198 (2000).

A claim for negligent misrepresentation may not be based on actions constituting a breach of contract between the parties. <u>McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.</u>, 87 Ohio App.3d 613, 629, 622 N.E.2d 1093 (1993)(damages recoverable for negligent misrepresentation do not include those

11

derived from the benefit of the plaintiff's contract with the defendant).  An action based upon tortious conduct which also arises from a contract must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of contract.  <u>Textron Financial Corp. v. Nationwide Mutual Ins. Co.</u>, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (1996).  Thus, where a plaintiff alleging negligent misrepresentation fails to establish the existence of a duty which was in addition to the defendant's obligations under a contract between the parties, or damages attributable to the negligent misrepresentation which were distinguishable from those claimed for the same conduct under a breach of contract theory, then the plaintiff may not recover under both theories.  <u>Id</u>., 155 Ohio App.3d at 152-54.

It is not apparent from the amended complaint that the duty to provide accurate information relied on by plaintiff in Count VI is duplicated in the agreements which are the subject of plaintiff's breach of contract claims.  However, even assuming that to be the case, plaintiff is entitled to proceed in the alternative on both theories.  <u>Universal Contracting Corp. v. Aug</u>, No. C-030719, A-0103486 (1st Dist. unreported), 2004 WL 3015325 at *6 (Ohio App. Dec. 30, 2004).  To the extent, if any, that plaintiff's negligent misrepresentation claim overlaps the breach of contract claims, plaintiff will not be permitted to obtain a double recovery if plaintiff prevails on both theories.  The motion to dismiss Count VI is not well taken.

Defendants have also moved to dismiss plaintiff's claim of negligent nondisclosure asserted against all defendants in Count

12

VII.  This is, in essence, a claim of negligent misrepresentation through omission.  A claim of negligent misrepresentation does not lie for omissions; there must be some affirmative false statement. Textron Financial, 115 Ohio App.3d at 149.  See also McMullian v. Borean, 167 Ohio App.3d 777, 783, 857 N.E.2d 180 (2006); Moffitt, 167 Ohio App.3d at 123.  Liability for an alleged omission lies, if at all, in fraud.  Textron Financial, 115 Ohio App.3d at 149. Defendants' motion to dismiss Count VII will be granted.

IV. Breach of Fiduciary Duty (Counts VIII and IX)

In Count VIII, plaintiff asserts a claim for breach of fiduciary duty against MDL Capital and Lay, acting as an agent of MDL Capital, based upon the role of MDL Capital as the plaintiff's investment adviser and fixed-income investment manager.  In Count IX, plaintiff asserts a claim for breach of fiduciary duty against all defendants.  Plaintiff alleges that the defendants, who had total managerial, administrative and investment authority over the assets of the Fund, owed a fiduciary duty to plaintiff, the sole shareholder of the Fund.

A fiduciary relationship is one in which one party to the relationship places a special confidence and trust in the integrity and fidelity of the other party to the relationship, and there is a resulting position of superiority or influence, acquired by virtue of the special trust.  Ed Schory & Sons, Inc. v. Society Natl. Bank, 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996).Under Ohio law, a broker or financial advisor is in a fiduciary relationship with his clients.  Byrley v. Nationwide Life Ins. Co., 94 Ohio App.3d 1, 18, 640 N.E.2d 187 (1994).

Defendants argue that plaintiff lacks standing to assert a

13

claim for breach of fiduciary duty in regard to the management of
the assets of the Fund, because any such claim belongs to the Fund,
not to plaintiff, its shareholder.  Defendants are correct that in
general, actions for breach of fiduciary duty on the part of the
officers or directors of a corporation are brought as derivative
suits.  Grand Council of Ohio v. Owens, 86 Ohio App.3d 215, 220,
620 N.E.2d 234 (1993).  However, this general principle has no
application where the wrongful acts are not only against the
corporation but are also violations of a duty arising from contract
or otherwise owed directly by the wrongdoer to the shareholder.
Adair v. Wozniak, 23 Ohio St.3d 174, 176, 492 N.E.2d 426 (1986).

Plaintiff contends that the duties upon which plaintiff relies
allegedly arose from the 1998 Management Agreement, and are
independent of any duty owed by MDL Capital to the Fund.
Defendants argue that this case does not concern the 1998
Management Agreement or the performance of the defendants under
that agreement.  However, the complaint is sufficient to allege a
breach of fiduciary duties arising from that agreement.  The
current record, including the Management Agreement, is not
sufficient to demonstrate as a matter of law that MDL Capital and
Lay owed no fiduciary duty to plaintiff under the 1998 Management
Agreement in their handling of the plaintiff's investments in the
Fund.  To the extent that plaintiff's breach of fiduciary duty
claims are based on the relationship created by or progressing from
the 1998 Management Agreement, plaintiff has pleaded a claim based
on a relationship and injury which is distinct from plaintiff's
status as a shareholder in the Fund.

However, the court does find that Count IX fails to state a

14

claim for breach of fiduciary duty against the Fund itself. Plaintiff's relationship with the Fund is contractual in nature. The Fund cannot give investment advice on its own, but rather can only act in that regard through its officers or directors.  The breach of fiduciary duty claim against the Fund is in essence a claim for breach of fiduciary duty against the Fund's officers and directors which may only be brought in a derivative action.  To the extent that Count IX pleads a claim against the Fund as a defendant, the motion to dismiss is well taken.

Defendants also argue that any claim for breach of fiduciary duty against MDL Capital may not be extended to apply to Lay as an officer and director of MDL Capital.  The Management Agreement was a contract between plaintiff and MDL Capital.  However, the Ohio Supreme Court has recognized that a fiduciary relationship may also be created out of an informal relationship, where both parties understand that a special trust or confidence has been reposed. Umbaugh Pole Building Co., Inc. v. Scott, 58 Ohio St.2d 282, 286, 390 N.E.2d 320 (1979).  A de facto fiduciary relationship may arise from a confidential relationship, in which "one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal." Indermill v. United Savings, 5 Ohio App.3d 243, 245, 451 N.E.2d 538 (1982). See also Applegate v. Fund for Constitutional Government, 70 Ohio App.3d 813, 816, 592 N.E.2d 878 (1990).

Plaintiff has alleged facts indicating that defendant Lay, as a director and the chief executive officer of MDL Capital, dealt directly with the plaintiff as an agent of MDL Capital.  Plaintiff

alleges that Lay was "a person with whom the Bureau had a special relationship of confidence and trust pertaining to the Bureau's investments[.]" Amended Complaint, ¶ 157. The allegations in the complaint are sufficient to allege that a de facto fiduciary relationship arose between plaintiff and Lay, and that this duty was distinct from any duty owed by Lay by virtue of his role as a director in the Fund.

Defendants further argue that plaintiff's amended complaint fails to allege any breach of fiduciary duty in regard to the defendants' management of the Fund because of the language in the PPM regarding the leverage guideline indicating that the guideline was subject to change at the sole discretion of the board of directors. As noted previously, this language is not dispositive of plaintiff's claims, particularly in light of the other allegations of fraudulent misrepresentations and omissions. Plaintiff has stated claims against MDL Capital and Lay for breach of fiduciary duty.

V. Constructive Fraud (Count XI)

In Count XI, plaintiff asserts a claim of constructive fraud against MDL Capital and Lay. Plaintiff alleges that MDL Capital, in its capacity as plaintiff's investment advisor, had a special relationship of trust and confidence with plaintiff and owed plaintiff fiduciary duties. Amended Complaint, ¶¶ 175, 177. Plaintiff further alleges that Lay, as chairman and chief executive officer of MDL Capital and the plaintiff's primary contact with MDL Capital and the Fund, was the person who personally provided plaintiff with investment advice and had the authority to make decisions regarding plaintiff's investments. Amended Complaint, ¶

16

176.  Plaintiff alleges that Lay also owed plaintiff fiduciary duties.  Amended Complaint, ¶ 177.  Plaintiff alleges that MDL Capital and Lay purposefully failed to disclose to plaintiff all of the material circumstances concerning the fund, and violated their fiduciary duties.  Amended Complaint, ¶¶ 178-181.

Constructive fraud may be found from the relation of the parties to a transaction, or from circumstances and surroundings under which it takes place.  <u>Hanes v. Giambrone</u>, 14 Ohio App.3d 400, 406, 471 N.E.2d 801 (1984); <u>Lake Hiawatha Park Ass'n v. Knox County Agricultural Soc.</u>, 28 Ohio App. 289, 291, 162 N.E. 653 (1927).  Constructive fraud does not require fraudulent intent. <u>Lake Hiawatha</u>, 28 Ohio App. at 291.  Constructive frauds are therefore assumed to have been committed by acts without regard to motive.  <u>Hanes</u>, 14 Ohio App.3d at 406.  However, a constructive fraud claim does require the existence of some peculiar confidential relationship between the parties which affords the power and means to one to take undue advantage of or exercise under influence over another.  <u>Id</u>.

Defendants argue that they only served in a fiduciary capacity under the 1998 Management Agreement with respect to the plaintiff's long-bond account, and that plaintiff cannot claim a fiduciary relationship by reason of MDL Capital's role under the Advisory Agreement with the Fund.  Plaintiff argues that the relationship of special confidence arose not from the Advisory Agreement with the Fund, but rather was an earlier relationship that existed prior to plaintiff's investment in the Fund.

The court finds that plaintiff has sufficiently alleged a claim for constructive fraud independent of MDL Capital's role

under the Advisory Agreement, and defendants' motion to dismiss this claim is not well taken.

## VI. Breach of Contract (Counts XII to XIV)

In Count XII, plaintiff asserts a claim of breach of contract against MDL Capital based on an alleged breach of the 1998 Management Agreement, through which MDL Capital agreed to act as a fixed-income investment manager for plaintiff. In this count, plaintiff alleges that MDL Capital breached the agreement by failing to provide monthly reports, failing to provide notice to plaintiff of every sale transaction executed by MDL Capital, and failing to abide by plaintiff's Statement of Investment Policy and Guidelines.

Defendants argue that the Management Agreement relates to MDL Capital's long-bond account, and that the Management Agreement is not the subject of this action. Defendants argue that the plaintiff's claims involve the Fund, not the long-bond account, and that therefore the Management Agreement cannot form the basis for a breach of contract claim. Plaintiff disagrees, arguing that the Management Agreement is related to its investment in the Fund. The amended complaint alleges that $200 million from plaintiff's existing long-bond account with MDL Capital was allocated by plaintiff to purchase shares in the Fund. Amended Complaint, ¶¶ 58-59. There is no language in the Management Agreement which categorically refutes plaintiff's argument that the Management Agreement extends to MDL Capital's involvement in the plaintiff's investment in the Fund.

In any event, the allegations in Count XII clearly refer to alleged failures on the part of MDL Capital to comply with the 1998

Management Agreement.  Regardless of whether plaintiff will ultimately be able to prove these alleged breaches of the 1998 Management Agreement and any injury resulting from these breaches, the court must accept all well-pleaded allegations in the complaint as true.  The court cannot say that plaintiff could prove no set of facts which would entitle plaintiff to relief on this claim.  The allegations in Count XII are sufficient to state a claim for breach of the Management Agreement.  Whether plaintiff can prove a breach of that agreement, and whether plaintiff can prove that the Management Agreement extended to MDL Capital's advising plaintiff concerning investment in the Fund, are evidentiary matters which must be left for summary judgment or trial.

In Count XIII, plaintiff asserts a claim of breach of contract against MDL Capital based on an alleged breach of the 2002 Advisory Agreement between MDL Capital and the Fund.  Plaintiff asserts this claim as a third-party beneficiary of the Advisory Agreement. Through this agreement, the Fund contracted for MDL Capital's investment management services, and delegated general authority to MDL Capital to manage the investment and reinvestment of the Fund's assets and to administer the Fund's business.  MDL Capital was also designated as an agent of the fund for the purpose of soliciting investors such as plaintiff.  Plaintiff alleges that MDL Capital breached the Advisory Agreement by failing to carry out its obligations under the Advisory Agreement in accordance with the investment policies in the PPM.

In Count XIV, plaintiff asserts a claim for breach of contract against the Fund based on the Subscription Agreement, under which the Fund agreed that the plaintiff's investment in the Fund would

19

be subject to the terms and conditions contained in the PPM. Plaintiff alleges that the Fund breached the Subscription Agreement by failing to carry out its obligations to adhere to the terms and conditions of the PPM.

Defendants argue that while the Advisory Agreement describes certain investment objectives, it states, "There is no assurance that the Fund will achieve its objectives." They repeat their previous arguments regarding the leverage guideline, and argue that MDL Capital and the Fund cannot have breached the Advisory Agreement or the Subscription Agreement by failing to adhere to the 150% guideline because the guideline was discretionary. As previously stated, this argument relies on defendants' interpretation of the PPM, and significantly oversimplifies the leveraging guideline provision and the nature of plaintiff's allegations. It may be that proof of this claim will depend on issues of contract interpretation and evidence not now in the record. However, the provisions of the PPM are not so clear and unambiguous as to preclude plaintiff's breach of contract claims as a matter of law. The allegations in Counts XIII and XIV are sufficient to plead breach of contract claims.

## VII. Conspiracy (Count XV)

Defendants have moved to dismiss the claim of civil conspiracy in Count XV. A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). Thus, to establish a claim of civil conspiracy, plaintiff must allege: (1) a malicious combination; (2) of two or

more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. <u>Id</u>. "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" <u>Williams v. Aetna Fin. Co.</u>, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998)(quoting <u>Pickle v. Swinehart</u>, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960)). An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. <u>Dickerson Internationale, Inc. v. Klockner</u>, 139 Ohio App.3d 371, 380, 743 N.E.2d 984 (2000). An act of fraud can serve as the underlying unlawful act or tort. <u>Id</u>.

Defendants argue that plaintiff has failed to allege a conspiracy under Ohio law because the complaint fails to adequately allege an underlying fraudulent act. However, this court has determined that the allegations in the complaint are sufficient to support the fraud counts. These allegations, which are incorporated by reference into the conspiracy count, are likewise sufficient to allege an underlying unlawful act for purposes of a civil conspiracy claim.

Defendants also argue that the conspiracy claim is barred by the intracorporate conspiracy doctrine. Under this doctrine, a corporation cannot conspire with its own agents or employees. <u>See Jackson v. City of Columbus</u>, 194 F.3d 737, 753 (6th Cir. 1999)(members of the same legal entity can't conspire with one another as long as their alleged acts were within the scope of their employment); <u>Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.</u>, 926 F.2d 505, 510 (6th Cir. 1991)(if all

21

defendants are members of the same collective entity, there are not two separate people to form a conspiracy).

In this case, defendant Lay is an agent of MDL Capital, a Pennsylvania corporation. He is also on the board of directors of the Fund. However, the Fund is alleged to be a separate legal entity, specifically, a mutual fund company incorporated under the laws of Bermuda. Amended Complaint, ¶ 2. Where more than one corporate entity is allegedly involved in the conspiracy, a conspiracy may be established and is not barred by the intracorporate conspiracy doctrine even though an individual defendant is an officer or agent of both corporations. Bell v. Bell, 132 F.3d 32 (table), 1997 WL 764483 at *8 (6th Cir. Dec. 3, 1997)(citing Fallis v. Dunbar, 386 F.Supp. 1117, 1121 (N.D.Ohio 1974), aff'd 532 F.2d 1061 (6th Cir. 1976)). In addition, two other defendants named in the complaint, Warwick Fiduciary Services, Ltd. and Hamilton Fiduciary Services, Ltd., are also separate legal entities. Although these defendants have been dismissed from this action due to lack of personal jurisdiction, the fact that this court does not have jurisdiction over these defendants does not mean that they may not be proved to be separate co-conspirators for purposes of establishing the conspiracy claim.

The amended complaint is sufficient to allege a claim of civil conspiracy under Ohio law, and that claim is not foreclosed by the intracorporate conspiracy doctrine.

## VIII. Unjust Enrichment (Count XVI)

In Count XVI, plaintiff has asserted a claim of unjust enrichment against defendants MDL Capital and Lay. Plaintiff seeks to recover any fees collected by or paid to these defendants as a

result of the role of MDL Capital as plaintiff's investment advisor and as advisor to the Fund, and as a result of plaintiff's investment in the Fund.

A claim of unjust enrichment is one of quasi contract founded upon the fundamental principle of justice that no one ought unjustly to enrich himself at the expense of another. <u>Hummel v. Hummel</u>, 133 Ohio St. 520, 527, 14 N.E.2d 923 (1938); <u>Fairfield Ready Mix v. Walnut Hills Associates, Ltd.</u>, 60 Ohio App.3d 1, 3, 572 N.E.2d 114 (1988). The "unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." <u>Id</u>., 133 Ohio St. at 528. In order to find that defendants were unjustly enriched, thus justifying a contract implied in law, the evidence must clearly and convincingly show: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. <u>Hambleton v. R.G.Barry Corp.</u>, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

Defendants argue that plaintiff's claim of unjust enrichment is barred because that claim is also the subject of plaintiff's breach of contract claim in Count XIII, which alleges a breach of the 2002 advisory agreement. It is true that the existence of an actual contract precludes any finding that a quasi-contract exists so as to permit recovery for unjust enrichment. <u>Barkan & Robon, Ltd. v. Wise</u>, No. L-05-1259 (6th Dist. unreported), 2006 WL 1580044 (Ohio App. June 9, 2006). However, plaintiff argues that the relief sought in the unjust enrichment claim is distinct from the relief sought in its breach of contract claims. <u>See Palm Beach Co.</u>

23

v. Dun & Bradstreet, Inc., 106 Ohio App.3d 167, 174-75, 665 N.E.2d 718 (1995)(unjust enrichment claim not precluded where it arose outside the parameters of the express contract and was premised on fraud and bad faith arising from a pattern of activity that had little to do with contract terms).  However, even assuming that the relief sought is overlapping, Ohio law permits a party to plead unjust enrichment and breach of contract as alternative theories. See Perrysburg Township v. City of Rossford, 149 Ohio App.3d 645, 658, 778 N.E.2d 619 (2002)(pleading breach of contract and unjust enrichment in the alternative does not negate the validity of either claim and does not warrant the dismissal of unjust enrichment claim).  If a trier of fact were to accept defendants' argument that plaintiff has failed to prove a breach of contract claims, then plaintiff would be permitted to pursue a recovery of fees under an unjust enrichment theory.

Defendants argue that the allegations in the amended complaint are insufficient to allege that Lay received any benefit from the plaintiff.  However, plaintiff alleges that "the Bureau has conferred a benefit upon MDL Capital [and] Lay ... in the form of advisory fees collected by MDL Capital" as a result of acting as the plaintiff's fixed-income investment advisor.  Amended Complaint, ¶ 213.  Plaintiff further alleges that MDL Capital and the individual director defendants (including Lay) wrongfully benefitted from their roles in fraudulently soliciting and obtaining the plaintiff's investments in the Fund and by receiving compensation, payments or fees for services in connection with the fund.  Amended Complaint, ¶ 215.  These allegations are sufficient to allege that Lay received compensation from fees paid by

24

plaintiff.

Defendants also argue that plaintiff's complaint does not state a claim for unjust enrichment against defendant Lay, because any fees or commissions due under the relevant agreements were owed and paid to MDL Capital, not to Lay. In essence, defendants are arguing that Lay, as an officer, director, and shareholder of MDL Capital, should not be held liable for an obligation of MDL Capital. See Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc., 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (1993)(shareholders, officers and directors are typically not liable for the debts of the corporation).

Plaintiff argues in response that Lay is the owner and controlling person of the entity that collected the fees (MDL Capital) and that the availability of additional funds to be used for Lay's compensation and bonuses was tied to amounts that MDL Capital collected from plaintiff's investments. Plaintiff is seeking to recover funds paid to Lay through MDL Capital. Basically, plaintiff is advocating the right to pierce the corporate veil. Under that theory, the corporate form may be disregarded, and shareholders, officers and directors of the corporation may be held liable for corporate misdeeds when: (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control or wrong. Belvedere, 67 Ohio St.3d at

25

289.

Plaintiff did not specifically refer to this theory by name in the amended complaint.  However, under Ohio law, a complaint need only give the defendant fair notice of a desired claim and an opportunity to respond.  See Leichliter v. National City Bank of Columbus, 134 Ohio App.3d 26, 31 (1999).  The same rule applies under federal law.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests).  Thus, even if a complaint contains no allegations specifying an intent to proceed under the doctrine, it is sufficient if the complaint contained some indication that evidence on the issue would be introduced at trial.  See Dalicandro v. Morrison Road Development Co., Inc., Nos. 00AP-619, 00AP-656 (10th Dist. unreported), 2001 WL 379893 at *7-8 (Ohio App. 2001).

Plaintiff alleged in the amended complaint that defendant Lay is a director of the Fund and a shareholder and director of MDL Capital.  Amended Complaint, ¶ 4.  Plaintiff further alleged that Lay was the chairman and chief executive officer of MDL Capital, was plaintiff's primary contact with MDL Capital and the Fund, was the person who personally provided plaintiff with investment advice, and was given authority to make decisions regarding plaintiff's investments.  Amended Complaint, ¶ 176.  It is further alleged that the defendants, including Lay and MDL Capital, "acting in concert and in malicious combination, caused the fraudulent sales of shares of the Fund to the Bureau and together fraudulently induced the Bureau to invest in the Fund[.]"  Amended Complaint, ¶ 207.  The amended complaint contains other allegations of

fraudulent acts on behalf of defendant Lay which were possible by reason of his position with MDL Capital and the Fund.  The amended complaint contains sufficient allegations to permit the plaintiff to pursue its unjust enrichment claims against defendant Lay under the theory of piercing the corporate veil.

Defendants' motion to dismiss the claim of unjust enrichment is denied.

## IX. Aiding and Abetting Fraud Claim (Count XVII)

Defendants have also moved to dismiss the claim of aiding and abetting fraud alleged against defendant Lay in Count XVII on the grounds that Ohio does not recognize such a claim.  The Ohio Supreme Court has not directly addressed this issue.  Defendant relies on Federated Management Co. v. Coopers & Lybrand, 137 Ohio App.3d 366, 381, 738 N.E.2d 842 (2000), in which a court of appeals held that Ohio does not recognize a civil claim for aiding and abetting fraud.  However, a few months after that decision, the Sixth Circuit in Aetna Casualty and Surety Co. v. Leahey Construction Co., Inc., 219 F.3d 519, 533 (6th Cir. 2000) noted the decision of the Ohio Supreme Court in Great Central Insurance co. v. Tobias, 37 Ohio St.3d 127, 524 N.E.2d 168, 172 (1988), in which that court alluded to the possibility that aiding and abetting fraud could be actionable under Ohio law.  The Sixth Circuit concluded that the Ohio Supreme Court "would recognize aiding and abetting liability if squarely faced with the issue[.]" Aetna Casualty, 219 F.3d at 533.  But see Pavlovich v. National City Bank, 435 F.3d 560, 570 (6th Cir. 2006)(noting that "[i]t is unclear whether Ohio recognizes a common law cause of action for aiding and abetting tortious conduct.").

27

In the absence of a subsequent change in state law, this court is bound to follow the Sixth Circuit's opinion regarding Ohio law in <u>Aetna Casualty</u>.  <u>See</u> <u>Shandwick Holdings Ltd. v. Carver Boat Corp.</u>, 93 F.Supp.2d 1043, 1047 (E.D.Wis. 2000)(district court must follow prediction of circuit court concerning state law absent intervening events which would persuade circuit court to overrule its earlier pronouncement); <u>Scadron v. City of Des Plaines</u>, 734 F.Supp. 1437, 1452 (N.D.Ill. 1990)(where circuit court has made determination of how state's supreme court would decide issue of state law, that determination is binding on district courts within the circuit absent a subsequent change in state law); <u>Nixon v. Celotex Corp.</u>, 693 F.Supp. 547, 553 (W.D.Mich. 1988)(absent controlling precedent from state court, district court is bound by Sixth Circuit opinion regarding state law).  Further, given the uncertainty in the law and the fact that it cannot be said conclusively that Ohio law does not recognize an aiding and abetting theory, this court declines to dismiss the aiding and abetting claim on a motion to dismiss.

This branch of defendants' motion to dismiss is denied.

<u>X. Conclusion</u>

In accordance with the foregoing, defendants' motion to dismiss Count VII, as to all defendants, and Count IX as it applies to the defendant Fund, is granted.  In all other respects, the motion to dismiss is denied.


Date: January 29, 2007          _____s\James L. Graham_____
                                James L. Graham
                                United States District Judge


28